*The following opinions were delivered :
By Mr. Justice Nelson.
An executor or administrator represents the person of the testator or intestate in respect to his personal estate, the whole of which vests in the one on the death of the testator, and in the other on the grant of letters of administration, which relate back to the time of the decease of the intestate. Valentine v. Jackson, 8 Wendell, 302. The interest thus vested in such personal representative is for the benefit of the estate; to discover and collect the effects; preserve them from waste; pay the debts in their legal order; and to distribute the surplus, if any, according to the will of the testator, or the law of distribution, as the case may be. To this end he is invested with every power and remedy which'belonged to the deceased while living, within the jurisdiction of the state in which the letters testamentary or of administration were granted. Beyond this, such letters can of course communicate no binding authority, unless by the comity or law of the foreign tribunal or state. This is the general rule in England and in this country. 3 Mass. R. 514. 1 John. Ch. R. 153. 9 Wheat. R. 565. The local law of some of the states permitted suits to be brought in their courts by a person whose authority to sue was derived from letters granted in other states. This was the law of Pennsylvania till 1831, when it was altered. 1 Dallas’ R. 291. 1 Binney’s R. 63. Laws of Penn. 1831. But though it may be necessary for the personal representative of the deceased, in the place of the domicil of the latter, to take out new letters in a foreign state or country to collect the effects there, yet I apprehend it is almost a matter of course to grant them to him, or to any competent person on application. This seems necessarily to follow from the rule which is now universal, or nearly so, in all civilized countries, that the personal estate of the deceased, wherever it may be situated, is to be disposed of and distributed according to the laws of the country in which he had his domicil at the time of his death. 2 Bos. & Pul. 229, note. 5 Vescy, 750. 7 Cranch, 115. 3 Pick. 128. 4 Johns. Ch. Rep. 469. 4 Kent’s Com. 431, 2. There is a difficulty in the execution of the rule, ^growing out of the claims of the home creditors, which has perplexed courts in different countries, where the soundness and justice of it has been fully acknowledged. Upon that point, considerable diversity of opinion exists in the courts here, and even the courts of England have not always been consistent, though she is most interested in its unqualified execution, being always the the greatest creditor.
When the notes in question were discovered, there was due upon them about $900, and the case concedes that Feltz was able to pay them. Even if it had been necessary to have taken out new letters in Pennslyvania, and to have enforced the collection by due course of law, considering the amount of the demand and the facility with which these steps might have been taken, together with the ability of the debtor, I should have deemed this a duty fairly devolving upon the appellant by virtue of his office. He had the exclusive legal possession of the notes, and without his consent, so long as he continued the administrator of the estate, no other person could collect the demand. The case states he refused to go into Pennsylvania himself for this purpose. I think he was bound to go ; but if not, he should have furnished an agent in that state with evidence that would have enabled him to obtain letters, if necessary, and thereby have enforced the collection. But if he had bestowed any diligence or ordinary attention to the duty of his trust, he would have ascertained that according to the law there at the time, no new letter was necessary; and that the note could have been collected by employing an attorney. Even less than this, for aught that appears in the case, he might have received the money by asking for it; for Feltz was abundantly able, and with the means in his hands and in the *366 case of an honest debt, we are not to presume a suit would have been necessary. The law will not presume that mankind in general refuse to pay their honest debts when they have abundant means, till compelled by its process ; nor is the fact so.
The notes are not negotiable, being sealed instruments, and there was a subscribing witness to their execution ; and though lost, there could have been no great embarrassment in enforcing the collection. 3 T. R. 153, and n. c. 3 Cowen, *303. But yielding, for the sake of the argument, that the administrator was not bound to take any steps in the matter during the three years and until the notes were found, after that he should have immediately attended to their collection. Two years and an half more elapsed prior to the institution of this proceeding against him ; during all which time lie took no measures on the subject. The utter remissness of duty, and disregard of the interest of the estate in this particular, are calculated to excite a suspicion of collusion between him and Feltz. No prudent man would have thus neglected his own concerns, and less diligence and atten tion can in no instance be indulged in an administrator; the course of the decisions would seem to exact a greater activity and devotion in the execution of their trust. 4 Johns. Ch. R. 284, and cases there cited.
The general rule is that all debts in the inventory, not designated as despe rate, shall be accounted assets in the hands of the executor or administrator ; and in order to escape such accountability, he must show that they are desperate, or at least must show a demand and refusal. 1 Salk. 295. Bul. N. P. 140. 3 Bac. 47. The notes, in this case are inventoried as a part of the assets, with the remark that they could not be found; that explanation, after March, 1826, was no longer applicable to them. In the case of Lawson v. Copeland, 2 Brown’s C. C. 156, an executor was charged with a bond debt, for neglecting to take legal steps to collect it, in consequence of which it was lost. So in Powel v. Evans, 5 Vesey, he was charged for neglecting to call in money lent out by the testator on personal security, and the debtor became insolvent. In Caffrey v. Darley, 6 Ves. 487, trustees were charged with a loss occasioned by their negligence in not collecting £800, payable to them by annual instalments, for their cestui que trust. In this case it was conceded by the counsel and court, that the trustees were not influenced by any impure motives. The master of the rolls says, it would be very dangerous, though no fraud could be imputed to the trustees, and no kind of interest or benefit to themselves was looked to, to lay down this principle, that trustees might, without any responsibility, act. as these did : in eight *years, within which time the whole money ought to have been paid, receiving only £250, and taking no steps as to the remainder. It would be an encouragement to bad motives, and they cannot always be detected. Now, if in all these cases the executor or trustee was chargeable for debts through negligence of duty in the collection of them, and in cases too, where there was no hope of reimbursement, as the debtors were insolvent, it seems to me we should not hesitate as to the conclusion in this case, marked at least with equal neglect of duty, and where reimbursement is certain. We should hold the appellant personally responsible for the debt, and thereby add to the motive of duty as administrator that of personal interest in his movements hereafter on the subject. Though I should regret to charge an administrator who has acted in good faith, and intended fairly and fully to discharge his duty, nor will the law authorize us to do so, if these intentions have been directed by a reasonable judgment in the matter: yet it should be known, that if the property is wasted through their carelessness and want of proper attention, or if the debts are not *368 collected within a reasonable time after letters testamentary or of administration, either by personal application or suit, which, by such means, may have been collected, whether the debts have been lost by such delay or not, or whether their motives may have been pure or not, the law holds them personally responsible to the creditors and distributees. There is nothing hard or unjust in this principle. It is only exacting of these representatives that diligence and attention to the business of others, voluntarily assumed upon themselves, which they should, and which every discreet man would bestow upon his own. I am therefore in favor of affirming the decree of the chancellor, with costs.
By Senator Edwards. It was admitted before the surrogate that the appellant refused to follow Feltz into the state of Pennsylvania, and take any measures there for the collection of the notes in question ; and the question is, ought his refusal or neglect in this particular to render him personally liable for the amount of the notes? It is true that the appellant might have gone into Pennsylvania and there collected the notes, *even without taking out another letter of administration, 4 Dall. 292, 1 Binney, 63; but not having done so, was he guilty of such gross negligence as to charge him with the amount of the debt, although the debtor is now abundantly able to pay the demand.
From the examination I have given this cause, I have been unable to find any case where the administrator has been held liable, even in cases of gross negligence, where it has not been attended with consequential damage to the estate. It was on account of the special damages which had ensued, that the administrator became liable to pay the demand in the case of Spoder v. Smith, 3 Russ. R. 511, where he had permitted the debt to remain out on personal security, until it was lost. And so in the case of Haywood v. Kinney, 12 Mad. R. 573, where the administrator delayed the collection until the statute of limitations attached, and the debtor availed himself of it, and the debt was lost; and so in several other cases of the like description. But I am not aware of any case previous to this we are now reviewing, which has adjudged the administrator liable to pay the debt, unless he has been guilty of such gross negligence as to occasion a total or partial loss of the debt to the estate, or some other consequential damage.
What particular inducement the appellant had for refusing to go into the state of Pennsylvania, and there collect the notes, does not appear. No reasons are assigned why he thus neglected and refused. But as he was personally interested in the collection of the debt, as well as by virtue of his appointment, the fair presumption would be, he considered it rather beneficial than otherwise to the interest of the intestate’s estate. He might have anticipated the return of Feltz to this state, and hoped to have been able to avoid the expense of a journey to the state of Pennsylvania, and a suit under the laws of that state. At all events, the case does not show that any damage whatever has resulted to the estate in consequence of the delay. If the respondents considered the delay unreasonable, they had it in their power at any time to summon the administrator before the surrogate to account, and he would have been driven to the necessity of either paying the ^amount of the notes, or producing them before the surrogate, when the respondents might have taken them to Pennsylvania, and collected them in the name of the administrator; or, if that had been refused, they might have taken out letters in their own names in that state, and made the collection. But there is no evidence whatever that the respondents ever requested the administrator to enforce the collection, or requested the notes, for the purpose of making the col *369 lection, or asked the use of his name for that purpose ; but they even declined to accept the notes when produced before the surrogate and offered to them, and relied solely upon the appellant’s being obliged to make the collection in consequence of having accepted of the appointment of administrator. In my view, his acceptance of the office of administrator, under the laws of this state, could impose upon the appellant no obligation whatever, to go into a neighboring state and enforce collections. • He undoubtedly might do so, but the question is, do the laws require him so to do ? If he must go into a neighboring state, he is equally required to go into any state in the union, or even to a foreign country, wherever a debt of the intestate may happen to be owing to the estate he is settling; and if he is legally bound to make all such collections, he is also liable to all the risks incident to the collection of foreign debts. I cannot consent to go thus far in imposing upon administrators such obligations and responsibilities.
The case shows that Feltz was in this state at the time the notes were found; and it is contended that the administrator ought then to have collected them, and not having done so, he should be chargeable. The only time of which we have any proof that he was in the state after the date of the notes, was at the funeral of his wife’s mother; and is any one prepared to say that Feltz ought to have been arrested while he made a visit to the state for the purpose of condoling with his friends on that solemn occasion ? I cannot believe that any of the heirs of that estate would have desired it; but if they would, the same motive that would have prompted any one to such an unnatural course, would at least have influenced him to have desired the administrator to have asked Feltz to pay the notes. But the case does not show that on this occasion or any other, any of the heirs ever requested the administrator to demand payment of Feltz; and much less to resort to a legal course; and whether the administrator did or did not, on that occasion or any other, demand payment of the notes, does not appear. I cannot, therefore, come to the conclusion, that even without a request from any party in interest ,o the administrator to enforce the collection of the debt by legal proceedings, md in the absence of all evidence that the estate has been damaged by the delay, there was such a gross negligence in the administrator as to charge him with the debt. I am aware, as the chancellor has justly remarked in his decision, that the principle involved in this case is one of considerable importance to the community. But I cannot concur with him in believing that either the public interest or the policy of our laws requires us to sanction the principle adopted by his decision in this case. So far are the liabilities of executors and administrators already extended as to occasion often great reluctance in the minds of capable and responsible men to accept these appointments; and it is often difficult for them to procure the bail required, in consequence of the great responsibility imposed upon them by some of the rigid provisions of our existing laws and rules of practice. I am, therefore, of the opinion that so far as public policy should affect our decision, we ought rather to restrict liabilities, than to extend them to the new class of cases which the decision now under review would embrace.
I am for reversing the decree of the chancellor.
By Senator Tracy. Chancellor Kent, in Thompson v. Brown, 4 Johns. Ch. R. 619, states it as an established rule in courts of equity, that “executors, administrators, or trustees, acting with good faith and without wilful default or fraud, will not be responsible for the loss which may arise.” This is a liberal, and, according to my notion, .a wise rule—one which I believe to be equally sanctioned by judicial authorities and by good sense. It is possible; *371 it, indeed, is not improbable that its broad application will sometimes screen, an executor or administrator from the consequences of an unjustifiable sleepiness in his ^office. But occasional cases of this sort are not to impair the force of a general principle which is founded in both justice and policy. The office of executor or administrator is never desirable, rarely desired, and not unfrequently difficult to be filled. It would, therefore, be against public convenience and the general welfare, to exact from those who exercise it, the same sharp sighted vigilance that might properly be claimed from a well feed attorney. It would be to render the duties so onerous and responsible that prudent and fit men would refuse to enter upon the discharge of them. It may be for this cause that administrators and executors are regarded by the law more in the character of public officers than that of private agents ; and if they fulfil their duties with that measure of diligence and fidelity which is ordinarily expected and obtained from other public officers, it would seem to be sufficient to protect them from personal liabilities.
In this case the administrator is not accused of bad faith; and all the circumstances go to repel a presumption of his having acted otherwise than according to his notions of duty. He may not have been very enterprizing or efficient; but I find no proof to convict him of that gross negligence which in law is to be deemed equivalent to wilful default. The grounds upon which the charge of gross negligence is put, are, first, that he neglected to compel Feltz to pay the notes when he (Feltz) was in this state—next, that he was bound to go to Pennsylvania, where Feltz resides, and enforce the collection against him there. Before examining these grounds, it may be proper to remark, that they are separate and distinct from each other, so that if neither of them alone is sufficient to sustain the charge against the administrator of gross negligence, it will derive no support from the other. They cannot be taken cumulatively to establish a conclusion which neither of them separately sustains. If the appellant’s omitting to prosecute Feltz when he was in this state, did not amount to such a wilful default as to charge him with the amount of the notes, the omission did not operate to impose on jiim any new or greater obligation to enforce their collection in Pennsylvania than if Feltz had never been in this state. To determine the nature of the appellant’s negligence in *not prosecuting Feltz when he was in this state, it is necessary to have in view the peculiar circumstances that mark the case. The appellant is the son and one of the heirs of the intestate; the respondents are also heirs. Feltz married the sister of the appellant, who is also the sister of several of the respondents. For several years after the death of the intestate, the notes did not come to the possession of the appellant, and could not be found, being concealed by the widow of the intestate, the mother of the appellant and of Feliz’s wife. At her death, in 1826, the notes were first discovered and obtained by the appellant. Feltz and his wife were then on a visit to the mother in her last sickness, and remained in the vicinity, visiting other relations, including of course the appellant and respondents, for two or three weeks after the burial of the mother and after the notes were found. For the appellant, at such a time and under such circumstances, to institute a suit against his brother-in-law, and either imprison him or hold him to bail, would not only have violated the rites of hospitality and the obligation of their fraternal connection, but have outraged the decencies of social life.
I confidently assert that no one, possessing well regulated feelings and correct moral sentiments, would have availed himself of such an opportunity to enforce the collection of his own debt; and it scarcely can be asked of an administrator to go further for another than he should go for himself. I have no *373 doubt that if the appellant had then sued Feltz, the respondents would have been among the first to condemn the act, as with great propriety they should have done ; and had he been arrested, it was to them that Feltz most naturally would have turned for assistance. The chancellor is far from making so rigorous an exaction from the appellant as to require that he should have commenced a suit; but he puts his negligence in this respect on the ground that he might have induced Feltz to settle the debts without resorting to a suit against Mm, “ if he had only used that degree of vigilance which even a careless man would have exercised in relation to his own debt.” I confess I find nothing in the case to justify this conclusion of the chancellor. What the appellant did, or what he omitted, which if done would *have made Feltz settle the debts without suit, does not appear. There is nothing to show that he did or did not solicit Feltz to pay or secure them ; and when we refer to Feltz’s means and distance from home, there is slight reason for presuming that he would or could have paid or secured the debts had he been solicited. Besides, the fact that the appellant had a personal interest as an heir in the collection of the debts, justifies a presumption that he did use at least that degree of vigilance which a careless man would exercise in relation to his own debt. Certainly it should not be assumed without proof that he wilfully neglected to do what he thought right and suitable; he may have erred in judgment, or been wanting in that keen scenting diligence which some men would have exercised. But this does not constitute that gross negligence which will charge him personally with the debts.
The other ground on which this charge of gross negligence is put, is, not going to Pennsylvania, where Feltz resides, to enforce the collection of the notes. This gives rise to the question whether a person who has received letters of administration in this state, is obliged to go out of it to collect debts due to the intestate. The general principle as to a letter of administration must be the same as that which governs any other process of a local tribunal—that it has no force or authority beyond the jurisdiction of the tribunal from which it issues. It has therefore been determined, by the courts of this and of several other states, that a person cannot sue or defend as executor or administrator under the authority of a foreign court of probates. See Doolittle v. Lewis, 7 Johns. Ch. R. 47. Williams v. Storrs, 6 id. 353. But it seems, from the case of M'Culloch v. Young, 1 Binney 63, that a rule differing from this general rule obtained in Pennsylvania previous to 1831, and that a suit might be maintained in the name of a person having letters of administration from another state. Admitting that the peculiar doctrine of Pennsylvania authorized the appellant as administrator to sustain a suit against Feltz, I am disposed to think, that in order to convict the appellant of gross negligence for not availing himself of the privilege, it should appear that he was conscious of possessing it. *A1though ignorance of the law does not excuse, the rule, I conceive, refers to the law of the country to which the party belongs, and does not refer to a peculiar custom or doctrine of a foreign state, in derogation of the general laws. There is no proof or probability that the appellant had any knowledge of the decision in Binney, or of the particular rule in Pennsylvania; but if he had, I am inclined to the opinion that the duties and liabilities of a person taking letters of administration under the laws of this state, are not to be affected or determined by the accidental rules as to his powers that may prevail from time to time in another state. It is to the laws and the tribunal from which he derives his official powers that he should naturally look for an exposition of them. Unless this be the correct rule, it would be impossible for an administrator to know what obligations and responsibilities he had assumed, or lo an *375 ticipate how far they would be enlarged or changed by the judicial decisions or legislation of foreign states. If an administrator in this state is bound to prosecute debts in Pennsylvania because the laws of that state authorize him to do so, the same principle would compel him to go to Missouri, to England or to India.
I do not intend to say that it would be improper for an administrator to take any notice of debts due to the intestate from persons residing without the state, or that it would not have been commendable in the appellant to have made some greater exertions to collect the debts against Feltz than he appears to have made; but I cannot, admit that his not attempting to enforce their collection in Pennsylvania is to be deemed such a wilful default as justified the surrogate in charging him with them. I am therefore for reversing the chancellor’s decree.
On the question being put, Shall this decree he reversed ? the members of the court voted as follows :
In the affirmative—The President, and Senators Deitz, Edwards, Griffin, Lynde, MacDonald, Stower, andTRAcy—8.
*In the negative—The Chief Justice, Mr. Justice Nelson, and Senators Armstrong, Conklin, Cropsey, Edmonds, Gansevoort, Hubbard, Quacicenboss, Van Schaick, and Westcott—11.
Whereupon the decree of the Chancellor was affirmed, with costs